JiSAUNDERS, Judge.
This is an appeal by Preston Plaisance, plaintiff-appellant, from the district court judgment affirming the decision of the City of Lafayette’s Civil Service Board. The Civil Service Board upheld the termination of Plai-sance’s employment with the City of Lafayette. We affirm.

FACTS

Plaisance was employed as a meter reader with the City of Lafayette’s Department of Utilities for approximately sixteen years and as such, was classified as a tenured civil servant.
On March 7, 1985, a complaint was lodged against Plaisance with the City of Lafayette by Bill Begnaud, the owner of a local automotive repair shop, alleging |2that Plaisance had threatened to tamper with his electrical meters.[1] After receiving this complaint, Plai-sance was confronted with the allegation by his supervisor, Jim Hanehey. Plaisance denied making any such threats.
Investigating these allegations further, Hanehey went to Begnaud’s place of business where he soon learned of additional allegations of wrong-doing on the part of Plaisance. Hanehey was shown three green meter seals and told that they were given to an employee, Charles Jacobs, by Plaisance with instructions on how to use the seals to alter the meter reading. The City of Lafayette had instituted a program whereby the green meter seals were put on the electric meters to prevent tampering. These seals would allow a meter reader to detect that a meter reading had been altered and thereby prevent electricity consumers from defrauding the City.
Hanehey took the seals back to his office and compared the numbers on them to the sign out sheets that were kept for the seals. These records showed that the seals had been checked out to Preston Plaisance.
Due to the seriousness of these allegations and his initial findings, Hanehey notified David Warren, Associate Director of Utilities for Administration.
On March 11, 1985, Plaisance was called into a meeting with Warren and Hanehey in Warren’s office. He was informed of the identity of the complainants, the content of the allegations, the subsequent discovery of the seals including the fact that they had been cheeked out to him, and he was given an opportunity to respond. Plaisance did not offer any explanation or response. Two hours later, he received a written notice of termination which included the reasons for his discharge.
laPlaisance appealed his termination to the City of Lafayette Civil Service Board. On June 12, 1985, a full evidentiary hearing was held at which Plaisance was represented by counsel and allowed to offer evidence and cross-examine witnesses. If his discharge was found to have been unwarranted, the Civil Service Board had the authority to remedy the situation by restoring Plaisance to his position with back pay. However, the Civil Service Board upheld the termination of his employment.
Plaisance then requested judicial review of the Civil Service Board’s decision pursuant to the Administrative Procedure Act, La.R.S. 49:950, et seq., and the regulations governing the Municipal Government Employee Civil Service Board. The 15th Judicial District Court affirmed the decision of the Civil Service Board. In its written reasons for judgment dated June 27, 1994, the district court specifically found that the termination of Plaisance’s employment satisfied the due process requirements as set forth in Cleveland Board of Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and that there was sufficient evidence to conclude that Plaisance did transfer the meter seals to an unauthorized person.
Plaisance appeals the decision of the district court as to its conclusion regarding procedural due process.

*416
PROCEDURAL DUE PROCESS

Plaisance contends that the district court erred in finding that the City of Lafayette did not violate his procedural due process rights when they discharged him. He maintains that the pretermination notice and hearing were insufficient to meet the minimum constitutional requirements.
| JAW
Tenured or classified civil servant status is recognized as a property right under the Louisiana Constitution and cannot be deprived without due process of law. Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.), cert. denied, 479 U.S. 827, 107 S.Ct. 105, 93 L.Ed.2d 55 (1986). However, due process is a flexible standard and calls for such procedural protections as the particular situation demands. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
Due process requires “some kind of a hearing” prior to the termination of an employee with a constitutionally protected property interest in his employment. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). However, the pretermination hearing does not have to be elaborate; nor does it have to definitively resolve the propriety of the discharge. Rather it should be a preliminary determination of whether there are reasonable grounds to believe that the charges against the employee are true and thereby act as a initial check against mistaken decisions. Louder-mill, supra, citing Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).
Loudermill involved the termination of two classified civil service employees and posed the question of whether their due process rights had been violated. The United States Supreme Court held that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures. In reaching this conclusion, the court noted that the essential requirements of due process are notice and an opportunity to respond. Specifically, in the employment situation, a tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer’s 15evidence, and an opportunity to present his side of the story. Loudermill, supra, citing Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).
In Wilson v. City of New Orleans, 479 So.2d 891 (La.1985), the Louisiana Supreme Court noted that the United States Supreme Court has held that hearings which take place after the government action, when combined with other safeguards, will suffice. See Arnett v. Kennedy, supra, (termination of government employment).
Neither party disputes Plaisance’s status as a tenured civil servant, nor that as such he is entitled to the protections of due process whenever the status of his employment is an issue. Therefore, the question before us is whether the City of Lafayette complied with the requirements of due process in Plai-sance’s termination proceedings.
Applying the above principles to the facts of this ease, we find that Plaisance received all the process that he was due. He was informed on March 7, 1985, that a complaint had been lodged against him alleging that he had threatened a consumer with tampering with his electric meters. On March 11, 1985, he was called into a meeting with his immediate supervisor, as well as the Associate Director of Utilities. At that time, the initial allegations against him were reiterated, as well as the additional findings regarding the unauthorized distribution of the seals, including the fact that the numbers on these seals corresponded with those that were checked out to him. Plaisance was also informed of the identity of the complainants and offered the opportunity to speak in his defense. By Plaisance’s own admission before the Civil Service Board hearing, he chose not to respond. We find that this notice and opportunity to respond, coupled with the full post-termination evidentiary hearing, satisfies the requirements of due process.
¡6In support of his contention that the district court erred, Plaisance cites Wilson v. City of New Orleans, 479 So.2d 891 (La.1985) and In re Adoption of B.G.S., 556 So.2d 545 *417 (La.1990) for the proposition that an individual must be apprised of the proposed action in order for the notice to be constitutionally adequate. These cases are distinguishable.
In B.G.S., the issue was whether the State could confer upon the mother of an illegitimate child the power to terminate the parental rights of the father without notice and an opportunity to be heard. At that time, the law allowed an unwed mother to refuse to put the father’s name on the birth certificate, the effect of which was to eliminate any standing the father had to withhold his consent to an adoption. When the identity of the father was not listed on the birth certificate, the mother’s act of surrender effectively terminated his parental rights. This statutory scheme was ruled unconstitutional. Because the law did not require that the natural father be given any notice or a hearing prior to the mother’s act of surrender, the father could lose all rights to his child without even knowing that these rights had been extinguished until it was too late for him to respond.
In Plaisance’s case, the City’s action did not affect his right to a subsequent formal hearing at which his employment, if deemed appropriate, could be restored.
In Wilson, the Court analyzed the City of New Orleans’ scheme for immobilizing vehicles for failure to pay parking tickets. In determining what process was due in that situation, the Court surveyed several United States Supreme Court cases. The Louisiana Supreme Court noted that the United States Supreme Court in Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), held that due process required the rudimentary precautions of oral or written notice of charges and, if denied, an explanation of the evidence against him and an opportunity to present his side of story. The Court found that the City’s ^immobilization procedure violated due process requirements on several grounds, one of which was that the vehicle owner was not given notice that an immobilization procedure was pending. The Court reasoned that an owner’s knowledge of his delinquency in payment of parking tickets is not equivalent to notice that an immobilization proceeding is pending.
In Plaisance’s case, it is clear that his knowledge of the severity of the charges against him was enough to put him on notice that he was facing serious disciplinary action — including the possibility of termination.
Neither of the cited cases involves the due process rights of a tenured civil servant in termination proceedings. These cases are further distinguishable in that the proposed actions in the above eases could foreseeably occur without the affected person having any knowledge that a protected interest was in jeopardy. The trial court was correct in its determination that Plaisanee knew the severity of the charges against him. When asked if he thought this was a serious offense, he replied that he did and that the green seal program had been instituted specifically to prevent tampering with the meters.
We have been provided with no authority that suggests that the terms of Plaisance’s employment required the City of Lafayette to do more than adhere to the constitutional minimum.
In Riggins v. Department of Sanitation, 617 So.2d 112 (La.App. 4th Cir.), writ denied, 619 So.2d 1064 (La.1993), the court found that Riggins’ due process rights had been violated because he'had not been given notice of the pretermination hearing and the proposed action. However, the court stated that Riggins’ due process right to notice and a pre-termination hearing was governed by the rules of the New Orleans Civil Service Commission, which specifically required that the employee be notified of the “disciplinary action being recommended prior |gto taking action.” Rule IX, Section 1.2. We are aware of no similar requirement in the Lafayette Civil Service Commission Rules.
Plaisanee also cites Burnett v. Department of Health and Human Resources, 425 So.2d 245 (La.App. 1st Cir.1982) and Major v. Department of Highways, 333 So.2d 316 (La. App. 1st Cir.1976) for his contention that the pre-termination notice was not adequate in that it did not contain the time, date, and other essentials of the charges against him. The trial judge found that at the time of the pre-termination meetings Plaisanee was advised with particularity of the allegations of *418 misconduct. A trial court’s finding of fact should not be reversed in the absence of manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989). We cannot say that the trial court was manifestly erroneous in its determination that Plaisance was advised of the specifics of the allegations against him sufficient to comport with the requirements of due process.

DECREE

For the foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant’s costs.
AFFIRMED.

. There is evidence in the record of a dispute between Plaisance and Begnaud regarding an unpaid bill for repairs to Plaisance's automobile. We do not discuss this dispute further because it is not relevant to our disposition of the due process issue.