ROSEMARY LEDET, Judge.
|, This is a retaliatory discharge suit. Chequita McGowan, a former public employee, commenced this suit against her former public employer, the Housing Authority of New Orleans (“HANO”). She alleged that HANO discharged her for speaking out on matters of public concern in violation of the right to freedom of expression under La. Const, art. I, § 7.[1] From the trial court’s decision granting HANO’s peremptory exception of no cause of action and its motion for summary judgment, Ms. McGowan appeals. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
For clarity of discussion, the factual and procedural background of this case is divided into three sections: (i) Ms. McGowan’s HANO employment history, (ii) HUD’s control of HANO, and (iii) Ms. McGowan’s lawsuit history.
(i) Ms. McGowan’s HANO employment history
In 1997, Ms. McGowan was hired by HANO as a Human Resource Analyst 3. Four years later, she was promoted to Human Resources Manager. She was later reassigned to the position of Director of Public Housing Management. | ¡¡This reassignment was followed by another one to the position of Director of Asset Management, the position she held in August 2005 when Hurricane Katrina struck the New Orleans area. Following the hurricane, Ms. McGowan was not recalled to work. In response, she filed a complaint with the Civil Service Commission. Thereafter, she was reinstated to her prior position of Director of Asset Management.[2]
In May 2008, HANO eliminated the position of Director of Asset Management. According to Ms.' McGowan, she was told that she had to formally apply for any vacancy that existed and that if she was not selected, she would be terminated. According to HANO, Ms. McGowan was given the opportunity to apply for other HANO positions that came available. She was offered at least two positions — Senior Asset Manager and Senior Project Manager. She selected the Senior Project Manager position, the position she held in June 2010 when HANO discharged her.
(ii) HUD’s control of HANO
HANO is a local public housing authority (“PHA”), which was established under Louisiana law. See Leaman & Reynolds Ins. Agency, Inc. v. Housing Authority of City of New Orleans, 159 So.2d 365 (La.App. 4th Cir.1964)(describing HANO as “a public corporation organized pursuant to the provisions of LSA-R.S. 40:391 et seq.”). HANO was established to receive federal funding to develop low income housing for New Orleans area residents. It was established in conformity with the United States Housing Act of 1937, 42 U.S.C. § 1437, etseq. (the “Housing Act”).
IsThe Housing Act authorizes the Secretary of HUD to take control of a PHA that is in “substantial default.” 42 U.S.C. § 1437d. When in control of a PHA, the *1146 Secretary of HUD is authorized by the Housing Act to take the following actions:
• It may abrogate any contract to which the United States or a U.S. agency is not a party that substantially impedes correction of the agency’s default, if efforts to renegotiate the contract fail.
• It may demolish or dispose of PHA property ... including transferring properties to resident-supported nonprofit entities.
• If considered appropriate by HUD and permitted under state and local law, it may seek the establishment of one or more new PHAs or the consolidation of part or all of the PHA into other, well-managed PHAs.
• It will not have to comply with any state or local law relating to civil service requirements, employee rights (except civil rights), procurement, or financial or administrative controls that, in the opinion of the [Secretary of HUD] ..., substantially impedes correction of the default.
Barry Jacobs, HDR HDBK. OF HOUSING AND DEV. LAW § 2:134 (2012).[3]
In February 1996, shortly before HANO hired Ms. McGowan, the Secretary of HUD, acting pursuant to 42 U.S.C. § 1437d, determined that HANO was in Insubstantial default” and took control of HANO. Throughout Ms. McGowan’s employment at HANO, HUD was in control of HANO.
Until April 2008, HANO employees, with minor exceptions not relevant here, were covered by the Louisiana Civil Service. See Department of State Civil Service v. Housing Authority of East Baton Rouge, 95-1959, p. 5 (La.App. 1 Cir. 5/10/96), 673 So.2d 726, 730 (noting that “[a]s nonex-cluded employees of a state agency or instrumentality, the PHA’s other employees are therefore classified civil servants of the State of Louisiana.”) In April 2008, the Secretary of HUD, again acting pursuant to the Housing Act, determined that it was necessary to exempt HANO’s employees from Louisiana civil service protections *1147 except for certain rules pertaining to civil rights (the “2008 HUD Determination”).[4]
(iii) Ms. McGowan’s lawsuit history
Ms. McGowan has filed a trio of lawsuits, including this one, that is relevant to the instant appeal:
• In August 2007, she sued HANO in Civil District Court seeking back pay retroactive to November 2005 when she claimed she should have been called back to work after the hurricane. HANO settled this claim.
• In December 2008, Ms. McGowan and several other HANO employees • (collectively the “McGowan Petitioners”) filed suit against the Secretary of HUD and the Louisiana Civil Service Commission (“LCSC”) in federal district court challenging the 2008 HUD Determination and alleging discrimination by HANO itself (the “2008 Suit”). (HANO was not expressly named as a defendant in the 2008 Suit.) The McGowan Petitioners claimed that the Secretary of HUD improperly determined that the state civil service rules were substantially impeding efforts to correct HANO’s substantial default. The plaintiffs further claimed that the LCSC acquiesced in the 2008 HUD Determination and failed to act on their behalf | swhen they appealed that determination to the Civil Service Commission. In December 2009, the federal district court dismissed the suit. McGowan v. U.S. Dep’t of Housing and Urban Dev. (08-3335 E.D.La. 12/31/09). In an unpublished opinion, the federal Fifth Circuit Court of Appeals affirmed. McGowan v. U.S. Dep’t of Housing and Urban Dev., 388 Fed.Appx. 433 (5th Cir.2010).
• In December 2010, Ms. McGowan filed the instant suit alleging violations of constitutional and civil rights and seeking reinstatement and damages. In March 2012, HANO filed an exception of no cause of action and a motion for summary judgment. • Following a hearing, the trial court in May 2012 rendered judgment in favor of HANO granting its peremptory exception of no cause of action and its motion for summary judgment. The trial court thus dismissed Ms. McGowan’s suit with prejudice. In so doing, the trial court expressly found that “Ms. McGowan’s asserted speech did not involve a matter of public concern.”
From the trial court’s May 2012 judgment dismissing her suit, Ms. McGowan appeals.
DISCUSSION
Although a peremptory exception of no cause of action and a motion for summary judgment are different procedural devices, under the facts and circumstances presented in this case it is unnecessary to differentiate between those two procedural devices.[5] Both the granting of an exception *1148 of no cause of action and the granting of a motion for summary judgment are reviewed under a de novo standard. Friel v. Louisiana Citizens Property Ins. Corp., 11-1032, pp. 4-5 (La.App. 4 Cir. 2/8/12), 85 So.3d 180,183 (no cause of action);[6] Johnson v. Loyola University of New Orleans, 11-1785, pp. 7-8 (La.App. 4 Cir. 8/8/12), 98 So.3d 918, 923-24 (summary judgment).[7]
*1149 Ms. McGowan’s claim against HANO is based on LA CONST Art. 1, § 7, pertaining to the right to freedom of expression. In the petition, she alleges that the violation consisted of the following:
The secretary of [HUD] ..., allegedly pursuant to the authority vested in him, removed all of the employees of [HANO] ... from the jurisdiction of the Civil Service Commission. The result of that action |7was to strip said employees of the civil service protections heretofore possessed by them.
Plaintiff, along with numerous other employees, filed a complaint with the federal court, challenging the removal of their civil service protection [the 2008 Suit]. The matter raised an issue of the utmost public concern. The public had an interest in knowing whether the secretary of HUD could remove from HANO employees rights and privileges enjoyed by most, if not all, public employees.
As a result of the complaint, HANO undertook retaliatory actions against nearly all, if not all, of the signatories to the complaint. Most, if not all, and particularly Plaintiff, were unjustly disciplined, demoted and/or terminated because of their participation in the complaint.
In retaliating against said employees, particularly Plaintiff, HANO violated their right to speak out on issues of public concern.
Thus, Ms. McGowan’s asserted protected speech is the 2008 Suit, which she and several other HANO employees filed challenging the legality of the 2008 HUD Determination and asserting discrimination by HANO.
To provide a framework for analyzing Ms. McGowan’s claim, it is necessary to summarize the allegations of the complaint underlying the 2008 Suit and the decisions of the federal district and appellate courts dismissing that suit. The underlying complaint can be summarized as follows:
• Effective April 17, 2008, all HANO employees were notified that they were no longer classified or unclassified civil service employees but rather “at will” employees pursuant to HANO’s secretary’s April 15, 2008 determination.
• HUD “has permitted [HANO] ... to engage in employment discrimination against its employees, which violates local, state, and federal employment laws.”
• “Petitioners have worked for [HANO] ... for years as Civil Service employees, and have a variety of undergraduate degree, graduate degrees, including but not limited to years of related work experience; however, such qualifications are no longer applicable for keeping their job, obtaining promotions, and receiving comparable compensation.”
|⅜* “Petitioners were stripped of their job security without any current governing rules, regulations and policies and procedures to ensure fair and lawful employment and contract and procurement practices.”
• Some HANO employees were told that “the jobs they held under the Louisiana Department of State Civil Services were no longer theirs and they had to apply for the job, if announced and be *1150 elected, and if they did not, they would be laid off. Employees responded to the informal announcement [lay off avoidance plan] to possibly keep their employment.”
• The McGowan Petitioners alleged that as a result of HUD’s decision to remove them from state civil service there have been unwarranted reductions in pay; promotions granted to undeserving employees; improper reassignments of employees; retaliation and harassment against employees; improper use of contractors instead of employees; and the replacement of qualified personnel with under-qualified and inexperienced personnel.
The McGowan Petitioners alleged that HUD’s and the Commission’s actions were improper for four reasons:
1) The reasons noted in the April 17, 2008 letter to HANO employees regarding Louisiana Civil Service Law and impediments are “alleged (nothing is conclusive).”
2) No reason is given why or in what way the civil service protection of HANO employees create such an impediment to HANO’s recovery.
3) HUD’s determination has permitted HANO to engage in obvious employment discrimination, which violates local, state, and federal laws.
4) The Commission’s failure to respond to its fiduciary responsibilities has enhanced HUD’s improper determination.
The McGowan Petitioners sought both injunctive relief and damages. The injunc-tive relief they sought was an order that HUD rescind the 2008 HUD Determination and return HANO to its previous classified and unclassified civil service classification, including applicable leave accrual without a break in service, service time, and automatic merit increases. The McGowan Petitioners also sought an order preventing and prohibiting all harassing, unfair, unlawful, discriminatory, 19and retaliatory employment practices. The damages the McGowan Petitioners prayed for included punitive damages and attorneys’ fees.
The federal district court, in dismissing the suit, noted that the McGowan Petitioners’ claims were that “they have lost their job security.” McGowan v. U.S. Dep’t of Housing and Urban Dev. (08-3335 E.D. La. 12/31/09) {unpub.). The court further noted that the crux of the complaint suggests that the McGowan Petitioners “are seeking redress for the collective whole of HANO’s state employees who wish to remain under the protections of the state civil service system.” Id. The court still further noted that they made “conclusory claims of discrimination, retaliation, and other alleged illegal acts committed by HANO’s staff — allegations that have nothing to do with HUD or the Secretary’s determination to waive state civil service rules.” Id.
Finding the Secretary of HUD’s action was authorized, the federal district court reasoned that it was undisputed that HUD had taken over HANO long before the 2008 Determination and that HANO was in “substantial default.” Id. The district court thus found that 42 U.S.C. § 1437d (J)(3)(D)(i)(V) expressly vested the Secretary of HUD with the discretion to waive Louisiana civil service requirements. The district court further found that the federal statute required only that the determination be in writing and set forth a basis for the determination that the waived civil service laws substantially impede the correction of the substantial default. The district court characterized the scope of its review of the Secretary of HUD’s discretionary determination as “exceedingly narrow” given Congress’ ex *1151 press grant of authority. Id. Finding the Secretary articulated a satisfactory explanation, the district court granted HUD’s motion for summary judgment. The district court also found that “[o]nce the Secretary made his determination to waive | instate civil service, the State had no authority to ignore the directive and had no standing to challenge it via an appeal to the Civil Service Commission.” Id.
In an unpublished opinion, the federal Fifth Circuit Court of Appeals affirmed. McGowan v. U.S. Dep’t of Housing and Urban Dev., 388 Fed.Appx. 433 (5th Cir.2010). In so doing, the Fifth Circuit provided the following synopsis:
This is an appeal of the district court’s dismissal of a pro se lawsuit by current and former employees of the New Orleans Housing Authority against the United States Department of Housing and Urban Development (HUD) and the Louisiana Civil Service Commission (LCSC). Common to all plaintiffs are claims that HUD improperly exempted the Housing Authority of New Orleans (HANO) from Louisiana civil service laws and that LCSC improperly acceded to HUD’s action. As briefly explained below, we affirm the district court’s dismissal.
We first address HUD’s liability. HUD took control of HANO, pursuant to 42 U.S.C. § 1437d(g). Under federal law, when HUD takes over a housing authority under § 1437d(g), it may exempt the housing authority from state civil service rules if those rules “substantially impede[]” HUD’s efforts to rehabilitate the housing authority. Id. § 1437d(j)(3)(D)(i)(V). In April 2008, HUD exempted HANO from Louisiana’s civil service rules. The plaintiffs say this action was arbitrary and capricious, in violation of the Administrative Procedure Act, but the undisputed facts do not support this view. HUD’s action was based on a memorandum that outlined various impediments to HANO’s mission, focusing especially on compensation limits that kept HANO from hiring the employees it needed, such as project managers to rebuild housing stock depleted by Hurricane Katrina, and substantial administrative burdens involved in both retaining necessary employees and terminating low-performing or unneeded employees. This memorandum suffices to pass the deferential standard of review for agency action. Turning to LCSC, once HUD properly exempted HANO from Louisiana’s civil service laws, LCSC could no longer enforce those laws. Even assuming LCSC had a duty to try to convince HUD to change its decision to exempt HANO, the plaintiffs point to no evidence that such efforts would have succeeded.
McGowan, 388 Fed.Appx. at 433-35.
As noted at the outset, Ms. McGowan, a former public employee, is asserting a free speech retaliation claim against her former public employer, |nHANQ.[8] Public employees’ free speech retaliation claims against their public employers present a sequential five-step series of questions:
*1152 (i) whether the plaintiff spoke on a matter of public concern;
(ii) whether the plaintiff spoke as a private citizen or public employee;
(iii) whether the plaintiffs protected speech was a substantial or motivating factor in the adverse employment action;
(iv) whether the state had an adequate justification for treating the employee differently from other members of the general public; and
(v) whether the state would have taken the adverse employment action even absent the protected speech.
Desrochers v. City of San Bernardino, 572 F.3d 703, 708-09 (9th Cir.2009) (quoting Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir.2009)). Because the trial court concluded that Ms. McGowan’s speech — the 2008 Suit — did not touch on a matter of public concern, it ended its analysis at step one. Because we find no error in the trial court’s finding that Ms. McGowan failed to establish that her speech touched on a matter of public concern, we likewise end our analysis at step one. See Click v. Copeland, 970 F.2d 106, 111 (5th Cir.1992) (noting that “[i]f the conduct does not touch a matter of public concern, the inquiry is at an end and a court will not scrutinize the reasons motivating the employer’s action.”)[9]
The sole issue presented to the trial court, and to this court on appeal, is the legal one of whether Ms. McGowan’s speech addressed a matter of public concern. See Salge v. Edna Independent School Dist., 411 F.3d 178, 184 (5th Cir.2005) 112(stating that “[w]hether the speech at issue is on a matter of public concern is a question of law that must be determined by the court.”) Public employees have the burden of proving that their speech addressed a matter of public concern. Connick v. Myers, 461 U.S. 138, 147-48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). The jurisprudence regarding the public concern requirement reflects that the “[ajnalysis of public concern is not an exact science.” Weeks v. Bayer, 246 F.3d 1231, 1234-35 (9th Cir.2001). Nonetheless, several guiding principles can be gleaned from the jurisprudence:
• Topics of public concern are those “relating to any matter of political, social, or other concern to the community.” Connick, 461 U.S. at 146 [103 S.Ct. 1684], “[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.” City of San Diego, Cal. v. Roe, 543 U.S. 77, 83-84 [125 S.Ct. 521, 160 L.Ed.2d 410] (2004).
• The pivotal issue to be decided is whether the speech at issue addresses matters of “public” as opposed to “private” interest. Desrochers, 572 F.3d at 709 (citing Connick, 461 U.S. at 147 [103 S.Ct. 1684]). The public versus private distinction reflects “the common-sense realization that government offices could not function if every employment decision became a constitutional matter.” Ballard v. Blount, 581 F.Supp. 160, 163 (N.D.Ga.1983).
• In addressing the public concern issue, the jurisprudence has employed, often conjunctively, two Connick-derived tests: (i) the content-form-context test; and (ii) the citizen-employee test. Kennedy v. Tangipahoa Parish Li *1153 brary Bd. of Control, 224 F.3d 359, 366 (5th Cir.2000), abrogated on other grounds by Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). Generally, the two tests lead to the same result. See Jingping Xu v. University of Texas MD Anderson Cancer Center, 854 F.Supp.2d 430, 436-37 (S.D.Tex.2012) (noting that “the question of whether an employee was speaking as a ‘citizen’ or as an ‘employee’ under the citizen-employee test is sufficiently covered by the content and context prongs of the content-form-context test.”)
• Under the first test, the court looks to the content, form, and context of the speech, as revealed by the whole record. Connick, 461 U.S. at 147-48 [103 S.Ct. 1684]. In other words, “the content, form and context must be considered as a whole package, and the significance of these factors will differ depending on the circumstances of the particular situation.” Moore v. City of Kilgore, Tex., 877 F.2d 364, 370 (5th Cir.1989).
• The second test is based on the statement in Connick that “when a public employee speaks not as a citizen upon matters of public concern, but instead | isas an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee’s behavior.” 461 U.S. at 146-47 [103 S.Ct. 1684]. Under the second test, the court decides whether the employee spoke primarily in his role as a citizen — and thus the speech is protected — or as an employee — and thus the speech is unprotected.
• The citizen-employee test focuses on “the hat worn by the employee when speaking,” meaning the extent to which the employee spoke as a citizen or an employee, rather than upon the inherent interest or importance of the matters discussed by the employee. Gillum v. City of Kerrville, 3 F.3d 117, 121 (5th Cir.1993). “This focus on the hat worn by the employee when speaking rather than upon the ‘importance’ of the issue reflects the reality that at some level of generality almost all speech of state employees is of public concern.” Id.; Morgan v. Ford, 6 F.3d 750, 755 (11th Cir.1993) (noting that as a practical matter, “[a]n employee’s speech will rarely be entirely private or entirely public”).
• “The citizen-employee test can yield indeterminate results because ‘[t]he existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern.’ ” Kennedy, 224 F.3d at 366 (quoting Dodds [v. Childers], 933 F.2d [271] at 273 [ (5th Cir.1991) ]). However, “an employee cannot transform a personal conflict into an issue of public concern simply by arguing that individual concerns might have been of interest to the public under different circumstances.” Dodds, 933 F.2d at 273; see also Teague v. City of Flower Mound, Tex., 179 F.3d 377, 382 (5th Cir.1999) (“[t]he mere insertion of a scintilla of speech regarding a matter of public concern would make a federal case out of a wholly private matter fueled by private, non-public interests.”). “Thus, ‘[i]n cases involving mixed speech lie., both public and private], we are bound to consider the Connick factors of content, context, and form, and determine whether the speech is public or private based on these factors.’ ” Kennedy, supra (quoting Teague, 179 F.3d at 382). Mixed speech is protected by *1154 the. First Amendment “as long as it was made ‘predominantly’ as a citizen.” Dodds, 933 F.2d at 273.
• The Fifth Circuit has recognized “three reliable principles,” derived from-its mixed speech precedent, for determining whether public employee speech is made as a citizen on a matter of public concern: “First, the content of the speech may relate to the public concern if it does not involve 'solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager’s status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee’s employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And third, the speech cannot be made in | furtherance of a personal employer-employee dispute if it is to relate to the public concern.” Kennedy, 224 F.3d at 372.
• The jurisprudence has recognized that “[i]n a close case, when the subject matter of a statement is only marginally related to issues of public concern, the fact that it was made because of a grudge or other private interest or to co-workers rather than to the press may lead the court to conclude that the statement does not substantially involve a matter of public concern.” Johnson v. Multnomah County, Or., 48 F.3d 420, 425 (9th Cir.1995).
With the above principles in mind, we turn to the issue presented on this appeal of whether Ms. McGowan’s asserted speech addressed a matter of public concern.
The gist of Ms. McGowan’s argument is that issues relating to a violation of the Louisiana Constitution are always a matter of public concern. She contends that the 2008 Suit raises such a state constitutional issue. In support, she notes that since 1921 (when the Louisiana Constitution of 1921 was adopted), all PHA employees have been state classified civil servants. She further notes that since 1937 (when HANO was created), HANO employees likewise have been state classified civil servants. She still further notes that the express language of-the Louisiana Constitution guarantees civil service status and due process rights to PHA employees. Based on their status, state classified civil servants have a constitutionally vested right that they cannot be deprived of without due process. Plaisance v. City of Lafayette, 94-1178 (La.App.3d Cir.3/1/95), 651 So.2d 414. Given the constitutionally protected nature of PHA employees’ civil servant status, Ms. McGowan characterizes HUD’s 2008 Determination as a “draconian measure” that drastically changed the way HANO operates — converted the status of HANO’s employees from civil servants to at-will employees. For these reasons, she contends that the she was addressing a matter of public concern in filing suit questioning the propriety of the Secretary of HUD’s decision to remove HANO’s employees from the classified civil service and questioning the. discrimination | ^within HANO itself. She also submits that, contrary to HANO’s suggestion, HUD’s 2008 Determination affected not only HANO employees, but also PHA employees statewide.
Ms. McGowan acknowledges, as HANO contends, that the federal complaint underlying the 2008 Suit alleges adverse employment action, which is a private concern. Nonetheless, she contends that the crux of the 2008 Suit was the evisceration of rights guaranteed by the state constitution, which is a public concern. She thus characterizes this case as a mixed speech case. She *1155 cites jurisprudence for the propositions that “only a portion of a communication need address a matter of public concern,” and that “the presence of a personal motivation for an employee’s speech, although certainly a factor in the public-concern analysis, need not destroy the character of a communication as one of public concern.” Brawner v. Richardson, 855 F.2d 187, 192 (5th Cir.1988); O’Donnell v. Barry, 148 F.3d 1126, 1134 (C.A.D.C.1998).
HANO counters that Ms. McGowan’s asserted speech — the 2008 Suit — relates solely to an internal, personnel matter that affects only the employees within the agency (HANO) and thus does not involve a matter of public concern. According to HANO, the 2008 Suit was simply a legal challenge to HUD’s determination to remove certain HANO employees from the civil service system, which merely changed employment conditions for certain HANO employees. HANO further counters that a review of the federal complaint underlying the 2008 Suit reveals that no constitutional violation — neither due process nor vested rights — was asserted. HANO still further contends that Ms. McGowan cannot transform the allegations of her prior complaint through arguments of counsel.
|1fiWe first address Ms. McGowan’s contention that this case can be characterized as a mixed speech case. In support of her contention that her speech involves primarily (or at least in part) a matter of public concern, she cites her allegation of a constitutional violation as a result of HUD’s 2008 Determination and her allegation of HANO’s discrimination. We find her characterization of this case as a mixed speech case unpersuasive for two reasons.
First, as HANO points out, the underlying federal complaint (summarized above) is devoid of any allegation of a constitutional violation. Attempts to construe asserted protected speech differently from its plain language and “post hoc characterizations” of speech have been rejected. Desrochers v. City of San Bernardino, 572 F.3d 703, 711-12 (9th Cir.2009) (citing Roe v. City and County of San Francisco, 109 F.3d 578, 585-86 (9th Cir.1997)). Rather, the jurisprudence has required that courts “look to what the employees actually said, not what they say they said after the fact.” Id. The federal complaint underlying the 2008 Suit, as the federal district court noted, alleges that the McGowan Petitioners “lost their job security” and that they “wish[ed] to remain under the protections of the state civil service system.” The 2008 Suit thus did not allege a constitutional violation — an arguable public concern — but rather alleged an employment dispute — a clearly private concern.
Second, although discrimination claims can under certain circumstances be a matter of public concern, the conclusory allegation of discrimination set forth in the underlying federal complaint — that “[HUD] has permitted [HANO] ... to engage in employment discrimination against its employees, which violated local, state and federal employment laws” — is insufficient to elevate the speech to a matter of public concern. “ <[P]assing’ or ‘fleeting' references to an arguably 117public matter do not elevate the speech to a matter of ‘public concern’ where the ‘focus’ or ‘point’ of the speech advances only a private interest.” Farhat v. Jopke, 370 F.3d 580, 592-93 (6th Cir.2004).[10]
*1156 Even assuming, arguendo, this case could be characterized as a mixed speech case, Ms. McGowan’s claim would nonetheless fail. Her asserted protected speech would not pass the Connick “content-form-context” test, which courts apply to determine whether speech is predominately public or predominately private. See Teague, 179 F.3d at 382, n. 4. Briefly, we review each of the three Connick factors.
(i) content
As to content, the jurisprudence is well-settled that speech regarding the topic of employment disputes — employment grievances, personnel disputes, and working conditions — generally does not involve a matter of public concern. See Connick, supra.[11] As a commentator explains, “[b]y separating employment disputes from other expressions, the cases teach that, when it comes to job-related grievances, ‘government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.’ ” 65 Randy J. Ko-zel, FREE SPEECH AND PARITY: A THEORY |„,OF PUBLIC EMPLOYEE RIGHTS, 53 Wm. & Mary L.Rev.1985, 1997-98 (2012).
Attempting to distinguish this ease from the employment disputes line of jurisprudence, Ms. McGowan contends that, contrary to HUD’s contention, the 2008 Suit did not involve a private concern regarding employment conditions — wages, hours, and working conditions — but instead involved a public concern regarding employment status — constitutionally protected civil servant status. Employment conditions and employment status are overlapping concepts that both fall within the ambit of employment disputes. Regardless, as discussed above, the federal complaint underlying the 2008 Suit is devoid of any allegation of a constitutional violation. The content of the speech set forth in that complaint does not involve a public concern; rather, it involves an employment dispute, which is a private concern.
(ii) form
As to form, this ease involves a public form of speech — a lawsuit. However, “the fact that a public employee chooses a public forum in which to state his essentially private concerns does not convert the private grievance into a matter of public concern.” Grace v. Board of Trustees for State Colleges and Universities, 805 F.Supp. 390, 393 (M.D.La.1992). The mere filing of a lawsuit does not automatically constitute protected speech; rather, courts are required “to examine the language in the Complaint to determine whether it implicates any matters of public concern.” Heusser v. Hale, 777 F.Supp.2d 366, 378-79 (D.Conn.2011); Pearson v. District of Columbia, 644 F.Supp.2d 23, 44 (D.D.C.2009) (noting that “ ‘not every law *1157 suit, just by virtue of its existence, presents a matter of public concern.’ ”). The content and context of the 2008 Suit, as discussed above and |1sbelow, establish that the asserted speech — the 2008 Suit— did not implicate a public concern.
(iii) context
Turning to context, this factor relates to whether the comments were made against a backdrop of widespread debate in the community. Desrochers, 572 F.3d at 715. The context of the speech — the point of the speech — asks “why did the employee speak (as best as we can tell)? Does the speech ‘seek to bring to light actual or potential wrongdoing or breach of public trust,’ or is it animated instead by ‘dissatisfaction’ with one’s employment situation?” Id. “The question of whether the speech was made to ‘further some purely private interest’ is relevant to that inquiry ... as is a determination of whether the speech was made in the context of a workplace ‘power struggle.’ ” Id. (internal citations omitted).
In support of her argument that the context factor supports a finding of public concern, Ms. McGowan states in her appellate brief the following:
There has been great debate recently, not just locally, but nationally, also, concerning the evisceration of the rights of public employees. The interest of the public in this issue is best illustrated by the recall elections occurring nationwide, e.g., Wisconsin, seeking the recall of elected officials who have pushed and/or signed legislation stripping public employees of the same rights which were taken from HANO’s classified civil servants.
Contrary to Ms. McGowan’s contentions, the context in which the 2008 Suit was filed does not support a finding that it raises a matter of public concern.
As HANO contends, the plain language of the 2008 Suit reveals that the McGowan Petitioners “were acting primarily as employees rather than citizens.... [They] spoke primarily as disgruntled employees pushing their personal grievances rather than informed citizens seeking to improve [New Orleans low income housing or HANO] in general.” Grace v. Board of Trustees for State Colleges and Universities, 805 F.Supp. 390, 393 (M.D.La.1992). There is no indication that Ms. McGowan intended by filing the 2008 Suit to advance a political or social point of view beyond the context of her HANO employment status. Indeed, the federal suit was one of several that she filed in an attempt to regain job security at HANO in the aftermath of Hurricane Katrina. When, as here, an employee’s speech is precipitated by adverse employment actions, it is not on a topic of public concern. See Desrochers, supra.
As discussed, the 2008 Suit was a challenge to the Secretary of HUD’s discretionary determination to remove HANO employees from state civil service protection. Both the federal district court and the Fifth Circuit Court of Appeals found HUD’s decision was legally authorized. See also Garcia v. Housing Authority of New Orleans, 09-1058 (La.App. 1 Cir. 12/23/09) (unpub.) (stating that “[HUD] Secretary Jackson’s decision to exempt HANO from state civil service is specifically authorized by 42 U.S.C. § 1437d(j)(3)(A)(iv).”)[12] Although Ms. *1158 McGowan suggests that HUD’s determination had ramifications outside the context of the agency (HANO) itself and that it affected all PHA employees, this argument is unpersuasive. HUD’s authority to make this determination was based on a federal statute that only applies to a PHA in “substantial default” and under HUD’s control; HUD’s authority did not extend to all PHAs in the state.
Our finding that the 2008 Suit did not involve a matter of public concern is buttressed by the holding in Ballard v. Blount, 581 F.Supp. 160, 164-65 (D.C.Ga.1983), that an administrative decision to grant or deny tenure does not |¾1 involve a public concern. In Ballard, supra, the court rejected the argument that the administrative decision on tenure involved a public concern because it would have an eventual or derivative impact on the public university’s students. The court reasoned that “[tjaken to its logical conclusion, the plaintiffs argument means that any time a person’s speech will have an effect on the public, regardless of how small or unlikely that effect may be, that speech relates to a matter of public concern. This was a specific concern of the Connick Court, and the Court wisely rejected this identical argument.” Id. at 164. The court in Ballard thus concluded that “absent unusual circumstances an administrative decision to grant or deny tenure to an individual is not a matter of public concern, and an individual challenging this administrative decision is without First Amendment protection.” Id. at 164-65. By analogy, we find, as in Ballard, supra, that the 2008 Suit challenging the administrative, discretionary decision of the Secretary of HUD to remove HANO employees from civil service protection is not a matter of public concern.
Based on our de novo review, we conclude that the trial court, as a matter of law, did not err in finding Ms. McGowan’s asserted speech did not involve a matter of public concern.

DECREE

For the forgoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. La. Const. Art. 1, § 7 states: "No law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom.” Although Ms. McGowan also alleged that HANO violated her constitutional right of access to courts (La. Const, art. 1, § 22) and the Louisiana Whistleblower statute (La. R.S. 23:967), she voluntarily dismissed these other claims in the trial court.

. As noted elsewhere, in August 2007, Ms. McGowan filed suit in Civil District Court seeking back pay retroactive to November 2005, when she claimed she should have been called back to work after the hurricane. HANO settled this claim.

. The pertinent provision of the Housing Act is 42 U.S.C. § 1437d (J)(3), which provides:
(D)(i) If, pursuant to subparagraph (A)(iv), the Secretary takes possession of all or part of the public housing agency, including all or part of any project or program of the agency, the Secretary
(I) may abrogate any contract to which the United States or an agency of the United States is not a party that, in the written determination of the Secretary (which shall include the basis for such determination), substantially impedes correction of the substantial default, but only after the Secretary determines that reasonable efforts to renegotiate such contract have failed;
(II) may demolish and dispose of all or part of the assets of the public housing agency (including all or part of any project of the agency) in accordance with section 1437p of this title, including disposition by transfer of properties to resident-supported nonprofit entities;
(III) may seek the establishment, as permitted by applicable State and local law, of 1 or more new public housing agencies;
(IV) may seek consolidation of all or part of the agency (including all or part of any project or program of the agency), as permitted by applicable State and local laws, into other well-managed public housing agencies with the consent of such well-managed agencies;
(V) shall not be required to comply with any State or local law relating to civil service requirements, employee rights (except civil rights), procurement, or financial or administrative controls that, in the Secretary’s written determination (which shall include the basis for such determination), substantially impedes correction of the substantial default; and
(VI) shall, without any action by a district court of the United States, have such additional authority as a district court of the United States would have the authority to confer upon a receiver to achieve the purposes of the receivership.

. The civil service rules that were carved out as exceptions — to which HANO employees remains subject — are Rules 14(a), (b), (c), (d), (e), (f), (g), (j), (k), (Z), and (m). These rules prohibit the following: employment discrimination based upon political or religious affiliations, race, sex, or organizational membership; payment or promise of payment of assessment, subscription, or contribution for political party, faction, or candidate; giving or receiving anything of value for a civil service position; political coercion; political activity (support of certain political issues shall not constitute prohibited political activity); and appointment of an elécted official to a civil service position. Garcia v. Housing Authority of New Orleans, 09-1058 (La.App. 1 Cir. 12/23/09) (unpub.)

. We note, however, that "[s]ome courts have held that a motion for summary judgment may not be used to dispose of a matter on a ground which ordinarily should be raised by another procedural device, such as a peremptory exception urging prescription or no cause of action, although such rulings probably are contrary to the Code’s theme of liberality of pleadings.” Frank L. Maraist and Harry T. Lemmon, 1 LA. CIV. L. TREATISE, *1148 CIVIL PROCEDURE § 6:8 (2d ed.2012). We further note that at least one Louisiana appellate court has held that "the introduction of records of prior suits is clearly evidence and improper at a hearing on no cause of action.” Ustica Enterprises, Inc. v. Costello, 434 So.2d 137, 139 (La.App. 5th Cir.1983). The federal courts, however, have held that taking judicial notice of public documents, such as a court record, does not convert a motion to dismiss to a motion for summary judgment. Pearson v. District of Columbia, 644 F.Supp.2d 23, 45 (D.D.C.2009) (citing Munoz v. Bd. Of Trustees, 590 F.Supp.2d 21, 25 n. 3 (D.D.C.2008)). Given the trial court not only granted HANO’s peremptory exception of no cause of action, but also granted its motion for summary judgment, we find it unnecessary to address these procedural issues.

. As we noted in Friel v. Louisiana Citizens Property Ins. Corp., 2011-1032, pp. 4-5 (La. App. 4 Cir. 2/8/12), 85 So.3d 180, 183:
"The function of the peremptoiy exception of no cause of action is to question whether the law extends a remedy to anyone under the factual allegations of the petition. Fink v. Bryant, 01-0987, p. 3 (La.11/28/01), 801 So.2d 346, 348. The peremptory exception of no cause of action is designed to test the legal sufficiency of the petition by determining whether the plaintiff is afforded a remedy in law based on the facts alleged in the pleading. Id., pp. 348-349. No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. Id. The exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Id. Because the exception raises a question of law and the trial court’s decision is based only on the sufficiency of the petition, the appellate court reviewing the judgment should subject the case to a de novo review. Id."
Id. (quoting Becnel v. Grodner, 07-1041 (La.App. 4 Cir. 4/2/08), 982 So.2d 891, 894).

. As we noted in Johnson v. Loyola University of New Orleans, 11-1785, pp. 7-8 (La.App. 4 Cir. 8/8/12), 98 So.3d 918, 923-24, the standard of review of a trial court’s ruling granting a motion for summary judgment, pursuant to La. C.C.P. arts. 966 and 967 and the jurisprudence, is as follows:
Appellate courts review the grant or denial of a motion for summary judgment de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. This standard of review requires the appellate court to look at the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to determine if they show that no genuine issue as to a material fact exists, and that the mover is entitled to judgment as a matter of law. A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate. To affirm a summary judgment, we must find reasonable minds would inevitably conclude that the mover is entitled to judgment as a matter of the applicable law on the facts before the court.
The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Summary judgments are favored, and the summary judgment procedure shall be construed to accomplish these ends. The code provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party's claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to *1149 satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.

Id.

. The jurisprudence has recognized that "[t]he Louisiana constitution guarantees the same liberties granted by the First Amendment, and is designed to serve the same purpose and provide at least coextensive protection.” Chicago Tribune Co. v. Mauffray, 08-522, p. 8 (La.App. 3 Cir. 11/5/08), 996 So.2d 1273, 1279 (citing State v. Franzone, 384 So.2d 409, 411 (La.1980)). Thus, in addressing Ms. McGowan’s claim that her right to freedom of expression under the Louisiana Constitution was violated we look to the jurisprudence addressing the parallel section of the federal constitution, the First Amendment. See Burkart v. New Orleans Police Dep’t, 03-1699 (La.App. 4 Cir. 3/31/04), 871 So.2d 1229 (citing First Amendment jurisprudence).

. We thus do not address the other four questions in the series. Nor do we address HANO's alternate contention that summary judgment was appropriate because Ms. McGowan failed to offer colorable evidence linking HANO’s decision to dismiss her in June 2010 to the 2008 Suit against HUD and the Commission.

. See Desrochers v. City of San Bernardino, 572 F.3d 703, 711 (9th Cir.2009) (rejecting claim that “a simple reference to government functioning automatically qualifies as speech on a matter of public concern” and noting that "the fact that speech contains ' “passing references to public safety[,] incidental to the message conveyed” weighs against a finding of public concern.’ Robinson v. York, 566 F.3d 817, 823 (9th Cir.2009)”); see also Heusser v. Hale, 777 F.Supp.2d 366, 381 (D.Conn.2011) (characterizing allegations as *1156 ''entirely conclusory” and noting the lack of any "specific or well-pleaded factual allegations regarding a practice or history of discriminatory treatment of the other individuals or entities.”).

. See also Marceaux v. Lafayette City-Parish Consol. Government, 921 F.Supp.2d 605, 635 (W.D.La.2013), 2013 WL 395844, pp. 15-16 (noting that “[a]n employee's complaints about his job or working conditions, as well as speech pertaining to internal personnel disputes are strictly personal and are not protected under the First Amendment”); Branton v. City of Dallas, 272 F.3d 730, 739 (5th Cir.2001) (speech by an employee pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern); see also Mark A. Rothstein, Charles B. Craver, Elinor P. Schroeder, Elaine W. Shoben, 1 Employment Law § 5.10 (4th ed.2012) (noting that "mundane employment grievances relating primarily to the individual employee ... including] individual job evaluations, complaints about individual working conditions, and employer grooming requirements” are not matters of public concern).

. Ms. McGowan contends that the fact HUD prevailed in the 2008 Suit is not relevant to the issue of whether the speech involves a matter of public concern. In support, she cites Woods v. Smith, 60 F.3d 1161, 1164 (5th Cir.1995), for the proposition that "favorable termination is not a requisite of a retaliatory interference claim.” Contrary to her contention, we find the rulings of the federal district and appellate courts dismissing the 2008 Suit are relevant in this case for the purpose of establishing the context in which that suit arose — a legal dispute over the authority of *1158 the Secretary of HUD to remove HANO employees from state civil service protection.